[No. 15786.  Department Two.  July 21, 1920.]

## J. J. HAGGERTY *et al.,* Appellants, v. BUILDING INVESTMENT COMPANY, *Defendant,* AMERICAN SAVINGS BANK & TRUST COMPANY, *Appellant,* and W. H. BOGLE *et al., Respondents.*[1]

MORTGAGES (67)—ABSOLUTE DEED AS MORTGAGE—RECORDING—REC-ORD AS NOTICE—REQUISITES—STATUTES.  Under the recording statutes, treating deeds and mortgages alike and requiring them to be indexed in the same general index, the record of a deed, absolute in form but intended as a mortgage, is notice to the world when recorded and indexed as its form suggests and the statute requires.

SAME (102)—TRANSFER OF PROPERTY—ASSUMPTION OF MORTGAGE DEBT.  A mortgagee by deed absolute in form, who gave a warranty deed to a purchaser and assumed a liability for liens not imposed by law or contract, which he was obliged to pay by reason of the warranty, cannot pass the burden to those in possession under claim of title who are in a position to demand that their obligation be limited to the strict terms of the mortgage.

Appeal from a judgment of the superior court for King county, Tallman, J., entered September 13, 1919, dismissing an action to foreclose a mortgage, tried to the court.  Reversed.

*H. A. P. Myers,* for appellants.

*Bogle, Merritt & Bogle,* for respondents.

TOLMAN, J.—The facts in this case are not seriously in dispute and may be stated chronologically as follows:  On May 27, 1902, the defendant Building Investment Company purchased from the Moore Investment Company, lots 21 and 22, in block 17 of Capital Hill addition No. 2, in the city of Seattle, and on the same day agreed with respondents to sell them the lots so purchased and to erect thereon a residence

[1]Reported in 191 Pac. 760.

according to certain agreed plans and specifications. The price of the lots being fixed, and respondents to pay in addition thereto the cost of the house to be erected, plus supervisory expenses agreed upon, the respondents then paid $1,000 on account of such purchase, and took a receipt in which was set forth the substance of the agreement, but the formal contract covering the transaction was not executed until June 30 following. In the initial agreement it was provided that the Building Investment Company should negotiate a building loan of $3,000 to be secured by a mortgage on the property, and it obtained such loan from appellant American Savings Bank & Trust Company. The mortgage given to secure this loan being placed of record on May 30, 1902, the respondents afterwards, by the deed which they received from the Building Investment Company, assumed this mortgage and have since paid it. On June 10, 1902, appellant J. J. Haggerty, acting for and on behalf of appellant American Savings Bank & Trust Company, took from the Building Investment Company a deed, absolute in form, to the lots in question (and other property), but intended as a mortgage to secure $2,400 then advanced by the American Savings Bank & Trust Company to the Building Investment Company, and to secure such future advances as the bank might make to the building company. This deed was filed for record on June 10, 1902, and afterwards recorded in a book of deeds, and indexed as a deed. Respondents, without any actual knowledge of the execution, delivery and recording of this deed, completed their payments to the Building Investment Company, and on August 2, 1902, received a deed from the Building Investment Company in accordance with the terms of their contract, which deed was filed for record November 15, 1902,

and was the first record notice of respondents' interest in the land. The residence was completed and respondents went into possession about October 1, 1902, and have since occupied the property as their home.

This action was brought to foreclose as a mortgage the deed given by the Building Investment Company to Haggerty, the complaint alleging the facts relating to the loan and the execution and delivery of the deed to secure it; that it was agreed that the property described in the deed, other than the lots now in question, should be released upon the payment of $200 for each lot, and that all other lots had been so released. The complaint further alleges that, by reason of litigation involving some of the lots, a lien was established thereon which the appellants were compelled to and did pay, and prays for a judgment for the amount unpaid on the original deed, plus the advances, and for the foreclosure of the deed as a mortgage. The answer, after certain denials, alleges that the respondents purchased the property in good faith, without notice or knowledge of any claim on the part of appellants; that, if the bank made any advances to the building company, they were made with knowledge of respondents' rights; that, if advances were made to discharge a lien upon the other lots, such advances were made because appellants were liable under a warranty deed made by them conveying such property, and not otherwise, and further alleges that, prior to the commencement of the action, appellants had received sufficient from the sale of other lands covered by the deed to pay in full any claims they may have had.

The cause was tried to the court, and after hearing the evidence upon both sides, the trial court dismissed the action upon the ground that the deed in question was not constructive notice to respondents, because it

was not recorded as a mortgage in a book of mortgages.

An examination of the authorities at once reveals that, in passing upon the question which is here presented, the courts of the several states have been largely influenced by the statutes in force at the time and place where the question arose. Our recording statute, Rem. Code, § 8781, provides:

"All deeds, mortgages, and assignments of mortgages, shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against *bona fide* purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world."

Section 8784 provides that irregularly executed instruments, when recorded, shall impart notice to third persons from the date of recording to the same effect as though properly executed. Section 8785 directs that, for the purpose of recording deeds and other instruments, the county auditor shall procure such books as the business of his office requires. Section 8786 is as follows:

"He must, upon the payment of his fees for the same, record separately in large well-bound books in a plain hand,—

" (1) Deeds, grants and transfers of real property, mortgages and releases of mortgages of real estate, powers of attorney to convey real estate, and leases which have been acknowledged or proved;

" (2) Marriage contracts;

" (3) Official bonds;

" (4) Instruments describing or relating to separate property or community interest of married women;

" (5) Patents to lands and receiver's receipts, whether for mineral, timber, homestead or pre-emption claims or cash entries;

"(6) Certificates of sales for county or municipal taxes:

"(7) All such other papers or writings as are required by law to be recorded and such as are required by law to be filed if requested so to do by the party filing the same."

And § 8787, so far as it affects the present question, reads:

"Every auditor must keep a general index, direct and inverted. The direct index shall be divided into seven columns, and with heads to the respective columns, as follows: Time of reception, grantor, grantee, nature of instrument, volume and page where recorded, remarks, description of property. He shall correctly enter in such index every instrument concerning or affecting real estate which by law is required to be recorded, the names of grantors being in alphabetical order. The inverted index shall also be divided into seven columns, precisely similar, except that the 'grantee' shall occupy the second column and 'grantor' the third, the names of grantees being in alphabetical order. For the purpose of this act, the term 'grantor' shall be construed to mean the person conveying or encumbering the title to any property, or any person against whom any *lis pendens,* judgment, notice of lien, order of sale, execution, writ of attachment, or claims of separate or community property shall be placed on record."

It will at once be seen that the statute makes no distinction between deeds and mortgages, and so far as recordable instruments are by statute classified, deeds and mortgages are placed in the same class. It is true that § 8785 authorizes the auditor to procure such books for records as the business of his office requires, and we know that it has been the custom to procure and keep mortgage records distinct from the records of deeds. But while recorded in distinct and separate books for convenience and not by any statutory re-

quirement, all are alike entered in the same general index which is required to be kept by § 8787, and since every searcher gains the information from the general index which leads him to the instrument desired, we think all must take notice of what the general index reveals, and none may be heard to say that, because the auditor may, for his own convenience or that of the public, record some of the instruments there indexed on one book and some in another, he may shut his eyes to what the index, speaking as the statute directs, tells him. It is true that in *Bernard v. Benson,* 58 Wash. 191, 108 Pac. 439, 137 Am. St. 1051, the broad statement was made:

"The custom has been uniform throughout the state to record all instruments affecting the title to real estate in Deed Records, those creating an incumbrance against real estate in Mortgage Records, and those evidencing title to personal property in Miscellaneous Records. This custom has been so general and has existed for so long a period of time that it is our duty, not only to judicially notice it, but to apply it as well."

As will be seen from the language quoted, the court there assumed that it was dealing with an instrument affecting the title to real property which had been recorded as though it related to personalty only, and so far as what is said appears to separate and distinguish deed records from mortgage records, it was *obiter* only, no doubt inadvertent, and should be disregarded. When so read, the holding there is in harmony with the rule long followed by this court. *Dunsmuir v. Port Angeles Gas etc. Co.,* 24 Wash. 104, 63 Pac. 1095; *Bonneviere v. Cole,* 90 Wash. 526, 156 Pac. 527. Since the plain language of the statute treats deeds and mortgages alike, classifies them together, and specifically directs that all instruments affecting real property shall be indexed in the same general

index, we find no difficulty in holding with the great weight of authority that a deed, absolute in form but intended as a mortgage, is notice to all the world of any and all rights which may be claimed thereunder, when recorded and indexed as its form suggests and the statute requires. 23 R. C. L. 188; L. R. A. 1916 B 600; *Kent v. Williams,* 146 Cal. 3, 79 Pac. 527; *Security Savings & Trust Co. v. Loewenberg,* 38 Ore. 159, 62 Pac. 647; *Livesey v. Brown,* 35 Neb. 111, 53 N. W. 838; *Marston v. Williams,* 45 Minn. 116, 47 N. W. 644; *Ruggles v. Williams,* 38 Tenn. (1 Head) 80; *Clemons v. Elder,* 9 Ia. 272; *Equitable Building & Loan Ass'n v. King,* 48 Fla. 252, 37 South. 181; *Kennard v. Mabry,* 78 Tex. 151, 14 S. W. 272. Other authorities are collated and discussed in an exhaustive note found in 8 Am. & Eng. Ann. Cas. 104.

Our views upon the main issue, as have been expressed, make it necessary to consider the defenses specially pleaded, and as we are without the assistance of any findings thereon by the trial court, we have carefully examined the record for the facts. It is not seriously claimed that the bank, when it made the original loan, had any actual knowledge of respondent's rights, and we think that defense is not established.

The second defense, that the subsequent advances were made not as a loan to the building company, but in satisfaction of a liability established by judgment against Haggerty, is more serious. In the action establishing that liability, Haggerty and wife were the only defendants, and the court found that they (though, as claimed both here and there, they were mortgagees only), gave to the purchaser a warranty deed; that the property was then subject to certain lienable claims which the purchaser was obliged to and did pay, and gave judgments against the Haggertys for the amount

thereof, which judgment was paid, not voluntarily as an advance under the mortgage, but involuntarily because of the liability flowing from the execution and delivery of the warranty deed. We find nothing in the record which in any wise convinces us that it was the duty of Haggerty, under the terms of the mortgage, to give the purchaser a warranty deed, and though the mortgage was in the form of an absolute deed, the law imposes no such duty. Having assumed a liability which neither the contract nor the law imposes, whatever the liability of the mortgagor may be, we think it inequitable that he should be permitted to pass the burden thereof to respondents, who were then in possession under a claim of title, and in a position to demand that their obligation be limited to the strict terms of appellant's mortgage.

We see nothing inequitable in the agreement, which the evidence seems to establish, that the lots mortgaged, other than the ones in question here, should be released upon the payment of $200 each, as they were of little value and subject to prior mortgages. Respondents are entitled to have credited upon the original loan $200 for each lot which was actually released and not lost by the foreclosure of a prior mortgage, and for any sum then remaining unpaid upon the original loan of $2,400. Appellants are entitled to a judgment and the usual decree of foreclosure.

Reversed, and remanded for further proceedings in accordance with the views herein expressed.

HOLCOMB, C. J., FULLERTON, MOUNT, and BRIDGES, JJ., concur.