[No. 8462-1-III.   Division Three.   September 14, 1989.]

CARL ELLINGSEN, ET AL, *Respondents,* v. FRANKLIN COUNTY, *Appellant.*

*Dennis DeFelice, Prosecuting Attorney,* and *Robert Ellis, Deputy,* for appellant.

*Robert Lamp* and *Witherspoon, Kelley; Carl Sonderman* and *Sonderman, Timmons & Hames,* for respondents.

[As amended by order of the Court of Appeals September 29, 1989.]

MUNSON, A.C.J.—Franklin County appeals the granting of the Ellingsens' motion for summary judgment quieting title to a section of a purported county road on their property. We reverse and remand.

The primary issue behind the summary judgment determination is which of two statutes controls the recording of interests in county roads: (1) the general recording statute, RCW 65.08.070, or (2) RCW 36.80.040, requiring the recording and filing in the office of the county engineer all matters concerning county roads. The trial court held the general recording statute controls.

In 1908 a group of landowners petitioned the County to create a county road over their property to be known as the Samuel Brown Road. Concurrent with the filing of the petition, each landowner executed a waiver of damages for the establishment of the road pursuant to Laws of 1895, ch. 50, § 2, p. 82 and § 6, p. 83 (now RCW 36.81.020–.090).

On March 9, 1909, the Franklin County Board of Commissioners enacted a resolution establishing the Samuel Brown Road.[1] The petition and waivers of damages were filed and recorded in the office of the county engineer, not

---

[1] The first signator on the petition was Samuel Brown.

in the office of the county auditor. The minutes of the board of county commissioners meeting establishing this county road were filed in the auditor's office pursuant to the predecessor of RCW 36.32.110.

In 1969, Carl and Virginia Ellingsen, as well as several other family members, commenced acquiring property which encompassed part of the Samuel Brown Road. Prior to purchasing, the Ellingsens visually inspected it and found no indication there was or ever had been a roadway in the area. They had observed an abandoned air strip and a foundation of a house, which are now identified as being located on a portion of the Samuel Brown Road.

This road was shown on county maps in 1912 and 1939 and was used by Franklin County as late as 1973 for hauling to and from a quarry site owned by Burlington Northern Railroad. There is no evidence the County either maintained or improved this road at any time prior to the Ellingsens' acquisition of the property.

The Ellingsens, having erected several sprinkler–irrigation circles on the alleged roadway, filed this action to quiet title. Both the Ellingsens and the County filed motions for summary judgment. After a hearing on November 3, 1986, the court granted the Ellingsens' motion for summary judgment and denied the County's motion. Franklin County appeals.

The County asserts the court erred in granting Ellingsens' motion for summary judgment, first, because they had constructive notice of the road's existence as a matter of law, either by the County's compliance with RCW 36.80-.040, or the minutes of the 1909 proceedings before the Franklin County Board of Commissioners on file with the county auditor. Second, the County contends general issues of material fact remain.

The Ellingsens assert the failure of the County to record the petition and waivers of damages in the auditor's office, pursuant to RCW 65.08, deprived them of constructive notice.

The trial court's memorandum opinion held filing in the county engineer's office was insufficient to put the Ellingsens on constructive notice of the existence of the county road. RCW 65.08 was enacted to ensure a uniform and dependable repository upon which purchasers of real property could rely for notice of any prior interest in the property. Furthermore, RCW 36.80.040 was principally enacted to provide a complete history of any county road, highway, bridge, ditch, or other survey, along with defining the responsibilities of a county engineer.

### STATUTORY CONSTRUCTION

The court's finding that the Ellingsens had no actual notice is unchallenged. Constructive notice may be given either by means of a public record or by inquiry notice. *Pagenelli v. Swendsen,* 50 Wn.2d 304, 311 P.2d 676 (1957). Inquiry notice has not been presented as an issue, thus this opinion is limited to an examination of the two statutes cited.

The general recording statute, in effect at the time the Samuel Brown Road was established, was substantially different than the present one. It stated in pertinent part:

> *All deeds, mortgages, and assignments of mortgages,* shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against *bona fide* purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world.

(Italics ours.) Laws of 1897, ch. 5, § 1, p. 5.

In 1927, this statute was amended and enlarged to encompass conveyances of any interest in real estate as that term was defined therein:

> The term "conveyance" includes every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected . . . "To convey" is to execute a "conveyance" as defined in this subdivision.

RCW 65.08.060(3).

The present general recording statute, RCW 65.08.070, states:

**Real property conveyances to be recorded.** A conveyance of real property, when acknowledged by the person executing the same (the acknowledgement being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded. An instrument is deemed recorded the minute it is filed for record.

The county engineer, at the time the road was established, was charged with keeping records pursuant to the Laws of 1907, ch. 160, which stated in pertinent part:[2]

SEC. 2. He shall keep in his office a highway plat book in which he shall have accurately platted all public roads and highways established by the board of county commissioners.

. . . .

SEC. 4. *The office of county engineer shall be one of record and there shall be recorded and filed*[3] *in his office, all matters concerning the public roads,* highways, bridges, ditches or other surveys of his county, *with the original papers, documents, petitions,* surveys, repairs and other papers, in order to have the complete history of any such road, highway, bridge, ditch or other survey: *Provided,* That in any county *where there is no qualified engineer,* the *records* of said office *shall be kept in the office of the county auditor.*

(Italics ours.)

■■ "[I]t is the duty of the court to ascertain and give effect to the intent and the purpose of the Legislature, as

---

[2]This statute is substantially similar to the present statute codified by Laws of 1963, ch. 4 (RCW 36.80.040).

[3]Recording is "[t]o commit to writing . . . to make an official note of . . . or enter in a book . . . for the purpose of preserving authentic evidence of . . ." an act. Black's Law Dictionary 1437 (4th ed. 1968). In practice, the document is presently given to the county auditor who either enters it into a computer data bank or microfilms it and returns it to the presentor. Filing is

[t]o lay away papers for presentation and reference. . . . To deliver an instrument or other paper to the proper officer for the purpose of being kept on file by him in the proper place. It carries the idea of permanent preservation as a public record.

(Citations omitted.) Black's Law Dictionary 755. When a document is filed, it is retained by the public officer, as distinguished from recording which, after the recording, is returned to the presentor.

expressed in the act." *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 391, 645 P.2d 697 (1982); *Department of Transp. v. State Employees' Ins. Bd.,* 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). Likewise, the court has the obligation to harmonize statutes if at all possible, so that each may be given effect and will give preference to a more specific statute only if the two deal with the same subject matter and have an apparent conflict. *Tacoma v. Taxpayers,* 108 Wn.2d 679, 690, 743 P.2d 793 (1987).

These two statutes have paralleled each other during this state's history. They deal with the same subject—the recording of interests in land. The general recording statute initially applied only to deeds. Laws of 1854, p. 402, § 4. It was later amended to include mortgages and subsequently amended adding assignments of mortgages; in 1927 a complete revision was made.

Likewise, near the turn of this century there apparently was concern and confusion about the location of county roads. The Legislature met these concerns by creating the office of county surveyor (Laws of 1895, ch. 77, § 1, p. 135) as an elective position. This position was later amended to an elective office of county engineer and eventually, as at the present time, the elective office was eliminated in favor of an appointive position under the direction of the board of county commissioners, who were also designated road supervisors. *See* Laws of 1907, ch. 160; *see also* Laws of 1937, ch. 187, § 4, p. 734. It is only within the last generation the county commissioners' duties, while numerous, have focused more on societal concerns than the location and listing of county roads. Thus, historically it is not surprising the office of the county engineer would be the logical repository of all public records pertaining to county roads, bridges, and the like, along with a highway plat book. Today, most county roads are visible and are either paved, graveled, or composed of compact soil. It is conceded the road in issue was none of these.

■■ The general recording statute, RCW 65.08, has never spoken to the recording of documentation of county roads. The more specific statute, RCW 36.80.040, deals with

recording of these matters and was enacted 20 years prior to the present general recording statute. The rule of statutory construction presumes the Legislature has considered its prior enactments when it amends legislation. *Department of Fisheries v. Chelan Cy. PUD 1,* 91 Wn.2d 378, 383, 588 P.2d 1146 (1979); *State v. Roth,* 78 Wn.2d 711, 715, 479 P.2d 55 (1971). Over one–half of a century has passed without the repeal of or amendment to the language of RCW 36.80.040, nor has the recording of documentation regarding county roads been inserted into the general recording statute, RCW 65.08. Thus, we hold RCW 36.80-.040 provided constructive notice to the world of the existence of a purported county road, as a matter of law.

Franklin County next asserts the minutes of the 1909 board meeting wherein Samuel Brown Road was established, subsequently filed with the county auditor, was also constructive notice. We disagree. While the county auditor is the clerk of the board of county commissioners, unless they designate one of their employees as such, and is required to retain the records of their proceedings pursuant to RCW 36.32.110 and .140, there is no requirement that an index or uniform procedure for the recovery of information be maintained. Consequently, to require the public to search the records of the proceedings of the board of county commissioners or to say that any information therein is constructive notice to the public presents too burdensome a task. The boards of county commissioners have been in existence for over 100 years. Without a comprehensive indexing system, as required either by the general recording statute or the engineer's statute, the minutes of board meetings do not provide satisfactory notice.

### GENUINE ISSUES OF MATERIAL FACT

Neither the originals nor copies of the waiver of damages filed with the county commissioners in 1908 were introduced into evidence; thus, we have nothing to indicate the language "of conveyance", if any. The trial court, utilizing the language of RCW 65.08.060(3), defining conveyance,

found the language in the waiver of damages met this defi-
nition and required filing in the auditor's office. That find-
ing was based on waivers, executed in the 1960's, which
were introduced into evidence. We have no assurance the
language of those waivers is consistent with those executed
in 1908. Thus, a material issue of fact is present.

Also in evidence are several documents entitled "Permit
to Use Unopened County Road Right–of–Way", issued in
1983 and 1984, to use the Samuel Brown Road. These per-
mits proclaim on their face "[t]he permittee understands
that this unopened right–of–way is not an established
County road and is not maintained by the County. . . ."
RCW 36.87.090 provides for the vacation of

> [a]ny county road, or part thereof, which remains unopen for
> public use for a period of five years after the order is made or
> authority granted for opening it, shall be thereby vacated, and
> the authority for building it barred by lapse of time . . .

The only exception to this statute is a road dedicated by
plat, duly recorded. The Samuel Brown Road was not
established by plat. In view of these exhibits, it becomes an
issue of fact whether this road has been vacated by opera-
tion of law.

Thus, in addition to holding the recording and filing
pursuant to RCW 36.80.040 was constructive notice, we also
find genuine issues of material fact are present requiring
reversal and remand for trial.[4]

SHIELDS, J., concurs.

STAUFFACHER, J.* (dissenting)—I dissent. I agree with the
factual background of this matter as stated by the majority.

---

[4]Franklin County advised the court that subsequent to the trial court's order,
it did record all the documentation pertaining to county roads with the county
auditor who then made it a part of the general index. Apparently, some counties
follow this practice and others do not. It is most certainly a convenience to the
inquiring public if this recording with the county engineer is duplicated by the
recording with the county auditor. The public is but assured by the duplicate
recording.

*Judge Walter A. Stauffacher is serving as a judge pro tempore of the Court of
Appeals pursuant to RCW 2.06.150.

I further agree that the sole issue to be determined is which of two statutes, RCW 65.08.070 or RCW 36.80.040, controls. The question is whether these two statutes are in apparent conflict. The trial court found no such conflict.[5]

To amplify the trial court's memorandum decision, we should make further analysis of the history of each of the statutes in order to ascertain the intent of the Legislature.

---

[5]The trial court's memorandum opinion in part states:

"There being no actual notice to the plaintiffs of the existence of the county roadway, the remaining issue is whether the plaintiffs were afforded constructive notice of the existence of the county roadway by virtue of the documents which authorized and established the roadway being maintained in the records of the Franklin County engineer. The resolution of that issue requires consideration of two statutes.

". . . .

"It is the court's conclusion based upon a careful reading of the two statutes and consideration of their apparent purposes that compliance with the provisions of the former, Chapter 65.08 RCW, is required to place the plaintiffs on constructive notice of the existence of a county roadway and that in the absence of such compliance, the recording of the documents authorizing and establishing the roadway in the office of the county engineer's does not impart such constructive notice.

"The whole purpose of the recording statute, Chapter 65.08 RCW, is to provide a uniform, dependable chain of title upon which purchasers of real property without actual notice of other prior interests in the property may rely.

". . . .

"Chapter 36.08 RCW, although designating the office of the county engineer an office 'of record', contains no similar provisions which address the effect or consequences of recording road documents therein.

"It will be seen from a comparison of Chapters 65.08 and 36.80 RCW that whereas the former relates to the recording of 'conveyances' and the consequences thereof, the latter chapter is a description of the responsibilities and duties of the county engineer. Although it is true that the engineers statute was enacted subsequent to enactment of the recording statute, I find nothing in the two statutes to suggest an intention by the Legislature that the engineers statute in any way supersede or supplant the provisions of the recording statute.

"The rationale for the provisions of RCW 36.80.040 and its predecessors, which has apparently remained unchanged since the original enactment, as it appears at the end of that section, is particularly instructive. The requirements of recording all matters relating to the roads are imposed 'in order to have a complete history of any such road, highway, bridge, ditch or other survey'. That rationale, particularly considered within the context of Chapter 36.80 RCW, reflects the purposes of that chapter to define the responsibilities of the county engineer, among which is the function as the repository for county road records. The records are not simply to be recorded but to be recorded and filed."

First, let us review the legislative history of the county engineer's statute, RCW 36.80.040.

When enacted by the Laws of 1907, ch. 160, this statute was entitled, "AN ACT changing the title of county surveyor to county engineer, relating to the election, powers, and duties of such officer . . ." It provided in section 4 "[t]he office of county engineer shall be one of record and there shall be recorded and filed in his office, all matters concerning the public roads . . ." Its stated purpose was "in order to have the complete history of any such road, highway . . ." Laws of 1907, ch. 160, § 4, p. 351. This definitively stated purpose has been retained and restated by the Legislature in every reenactment of the statute up to the present time. Even the latest enactment, Laws of 1969, 1st Ex. Sess., ch. 182, is entitled, "AN ACT Relating to counties; establishing procedures for road management and accounting . . ." Thus, we can see the Legislature has continually considered the primary purpose of this statute to be a delineation of the powers and duties of the county engineer in county road history and management.

The reasons for making this office "one of record" and having all documents pertaining to roads "recorded and filed therein" should be viewed in the context of the times. In 1907, counties were much more sparsely settled, roads were of great importance, and the taxpayers had a vested interest in the establishment and maintenance of their transportation routes. It was necessary that adequate and accurate records be made and maintained and that the taxpayers would have proper access to those records. This philosophy has carried forward to the present day. It should also be noted that in the earlier days, there were far fewer public offices and access to their records was far more restricted than in these modern times.

In contrast, and as noted by the majority, the initial recording statutes only protected a bona fide purchaser as to "all deeds, mortgages and assignments of mortgages" from 1854 to 1927. All other estates and interests in any parcel of real estate had to be individually determined by purchasers from other sources. As the population grew and

more and more land went into private ownership, together with increasing transfers and granting of security interests in real property, and the increasing proliferation of various other types of interests in real property, the Legislature obviously decided to create one specific place where all interests in real property would be recorded for the protection of bona fide purchasers, the grantor/grantee index.

Thus, the Legislature repealed that recording statute and passed an entirely new statute entitled, "AN ACT relating to the recording of instruments concerning real property . . ." Laws of 1927, ch. 278. This new statute covered "any estate or interest in real property"; required that any conveyance of such interests had to be recorded with the county auditor; and protected all bona fide purchasers as against any interest not so recorded. RCW 65.08.060(3), .070. Its purpose was to establish the one repository (the grantor/grantee index) where all "instruments concerning real property" must be recorded to be effective. Surely, the county engineers, who were undoubtedly dealing with real property matters on an almost daily basis, had to be aware in 1927 that this new statute dealt with *all* interests in real property which would include rights of way, easements, etc., and that all such county interests in real property should be properly recorded with the county auditor to protect against the claims of subsequent bona fide purchasers. Indeed, it is part of the record herein that Franklin County *did* record in the Franklin County auditor's office, as well as retain in the engineer's office, the waiver of damages establishing the Kruse Road, over which the alleged Samuel Brown Road passes and intersects. Further, as noted in footnote 4, Franklin County has now recorded *all* of its county road interests with the county auditor.

It was also clear in 1927 that the recording statutes applied to municipalities. *Lind v. Bellingham,* 139 Wash. 143, 147, 245 P. 925 (1926). An instrument required to be recorded in a certain book is not notice if recorded elsewhere. *Haggerty v. Building Inv. Co.,* 111 Wash. 638, 191 P. 760 (1920); Washington State Bar Ass'n, *Real Property Deskbook* § 38.9 (2d ed. 1986).

Our courts have consistently recognized the purpose of the Legislature in passing this new statute. In *Cunningham v. Norwegian Lutheran Church of Am.,* 28 Wn.2d 953, 956, 184 P.2d 834 (1947) (quoting *Bremerton Creamery & Produce Co. v. Elliott,* 184 Wash. 80, 50 P.2d 48 (1935)), the court stated:

> "Sections 10596–1 and 10596–2 [of Rem. Rev. Stat.] [P. C. §§ 1914–1 and 1914–2], *supra,* enacted in 1927, undoubtedly indicate a legislative intention to make the recording acts of this state more stringent as against one having an unrecorded right in land, and in favor of a purchaser without notice of such claim. Since the passage of this act, we have, when called upon to construe the same, recognized that principle in an endeavor to carry into effect the legislative intention."

(Citations omitted.)

Again, in *Biles–Coleman Lumber Co. v. Lesamiz,* 49 Wn.2d 436, 439, 302 P.2d 198 (1956), the court stated: "We have held that a bona fide purchaser for value of real property may rely upon the record chain of title as shown in the *office of the county auditor.*" (Italics mine.) *See Paganelli v. Swendsen,* 50 Wn.2d 304, 309, 311 P.2d 676 (1957); *Kshensky v. Pioneer Nat'l Title Ins. Co.,* 22 Wn. App. 817, 592 P.2d 667 (1979); *Koch v. Swanson,* 4 Wn. App. 456, 481 P.2d 915 (1971).

Thus, we can clearly see the contrast between the legislative purposes of the two statutes; the purpose of RCW 36.80.040 to require the maintenance of county road management and history records as opposed to the purpose of RCW 65.08.070 to provide one repository for the recordation of all estates and interests in real property. The trial court was correct in determining that RCW 36.80.040 does not provide constructive notice to a bona fide purchaser of possible defects in the title to property.

> The weight of authority is that, absent actual notice, the purchaser is not required to make any inquiry as to conveyances not in the chain of title. The bona fide purchaser is not placed under a duty in searching a title to go beyond the records in the chain of title.

Washington State Bar Ass'n, *Real Property Deskbook* § 38.25 (2d ed. 1986). This being so, Franklin County has failed to sustain its burden of proof as to constructive

notice. *Paganelli v. Swendsen, supra; Biles–Coleman Lumber Co. v. Lesamiz, supra; Hendricks v. Lake,* 12 Wn. App. 15, 528 P.2d 491 (1974). This being so, the trial court correctly awarded summary judgment to the Ellingsens. Therefore, the "genuine issues of material fact" pertaining to the establishment or vacation of this purported road are not pertinent.

Finally, this being a quiet title action, we may look to the equities of the situation. "'He who acts in reliance on the record has behind him not only the natural equities of his position, but also the especial equity arising from the protection afforded every one who trusts the record.'" *Lind v. Bellingham, supra* at 147 (quoting 23 R.C.L. 197, § 52). *Paganelli v. Swendsen, supra.* Here, there is no question the Franklin County engineer knew of the requirements of RCW 65.08.070, as it was shown that the waiver of damages for the Kruse Road was recorded in the auditor's office, even though the waiver of damages for the Samuel Brown Road was not and therefore was not in the chain of title. The County should not now be heard to rely upon the county engineer's office records as constructive notice to all purchasers.

To hold otherwise would subject every prospective purchaser of property or every person seeking a security interest in any property to a search of the county engineer's office in every situation and, for that matter, every other of the myriad public offices where any interest in real property might be located and which are now designated as "public records". *See* RCW 42.17.020(1), (26). That is far too burdensome a task to impose upon the general public and also the county engineer. How is the general public to know which "public records" might subject them to the legal niceties of "constructive notice"? As the Legislature intended, there should be one grantor/grantee index that the general public can reasonably rely upon when dealing with any interest in real property.

The trial court should be affirmed.

Review granted at 113 Wn.2d 1034 (1990).